# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------------X

BABACK KERMANSHAHI a/k/a BOB KERMANSHAHI,
    Plaintiff,

   -v.-

AMAZON WEB SERVICES, INC.,
    Defendant.

Index No.: _100410/2026_

Date Index No. Purchased: _4/16/26_

------------------------------------------------------------------------X

### SUMMONS

Plaintiff designates New York County as the place of trial.

The basis of venue is: The locus of the discriminatory acts and the administrative control of Plaintiff's employment records and benefits within New York County.

To the above-named Defendant:

    AMAZON WEB SERVICES, INC.
    JFK27 Corporate Office
    424 5th Avenue
    New York, NY 10018

YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your answer on the Plaintiff within twenty (20) days after the service of this Summons, exclusive of the day of service. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: April 16, 2026
New York, New York

BABACK KERMANSHAHI
Plaintiff Pro Se
110 West Dudley Avenue
Westfield, NJ 07090-4902
732-213-9526
Mail.bob.k@gmail.com

# FILED

APR 16 2026

NEW YORK COUNTY
COUNTY CLERK

1

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

-------------------------------------------------------------------------X

BABACK KERMANSHAHI a/k/a BOB KERMANSHAHI,
    Plaintiff,

-v.-

AMAZON WEB SERVICES, INC.,
    Defendant.

Index No.: 100410/2026

=ILED

APR 1 6 2026

NEW YORK COUNTY
COUNTY CLERK

-------------------------------------------------------------------------X

## VERIFIED COMPLAINT

Plaintiff, BABACK KERMANSHAHI (also known as Bob Kermanshahi), appearing pro se, for his Complaint against Defendant AMAZON WEB SERVICES, INC., respectfully alleges as follows:

### I. NATURE OF THE ACTION AND PARTIES

This civil action seeks emergency injunctive relief, equitable tolling, and damages arising from Defendant's willful violations of the New York State Human Rights Law (N.Y. Exec. Law § 296) and the New York City Human Rights Law (N.Y.C. Admin. Code § 8-101 et seq.).

Defendant AMAZON WEB SERVICES, INC. is a Delaware Corporation authorized to do business in the State of New York, with centralized administrative and payroll operations directing the employment terms of Plaintiff within New York County.

Pursuant to CPLR § 6301, Plaintiff seeks a Temporary Restraining Order to preserve the status quo and enjoin Defendant's retaliatory April 28, 2026, termination of Plaintiff's employment. Defendant's actions threaten immediate, irreparable equitable injury by permanently destroying Plaintiff's access to Defendant's closed internal employment market, willfully destroying the statutory cooperative dialogue, engaging in pretextual data falsification, and imposing an anti-competitive industry blacklist.

### II. FACTUAL ALLEGATIONS
### A. Protected Status and Medical Certification

4. Plaintiff is a qualified individual with a documented neurological disability.

2

5. On January 23, 2026, Plaintiff submitted a formal "Certification of Health Care Provider" to Defendant. This certification cleared Plaintiff to return to work subject to a strict medical restriction of 20 hours per week (50% capacity). Plaintiff's physician subsequently reviewed and updated this certification on February 26, 2026, officially extending the 20-hour restriction through the April 28 transition period. Plaintiff remains under active, ongoing medical care, and the 50% capacity restriction remains actively in effect as of the date of this filing.

6. On January 27, 2026, Defendant issued written confirmation officially approving Plaintiff's return to work on February 2, 2026. This written approval accommodating the 50% restriction established the last uncontested status quo.

## B. Reduction in Force, Retaliatory Revocation, and the Defunct Pivot Flag

7. On January 28, 2026, Defendant announced a corporate Reduction in Force (RIF). Defendant eliminated Plaintiff's role and placed Plaintiff into a 90-day non-working transition period concluding April 28, 2026.

8. Defendant's formal transition policy contractually guarantees impacted employees "will remain employed and will receive such pay and benefits," expressly detailing the privilege to "apply and interview for other Amazon job opportunities" via the internal A to Z portal. Plaintiff's primary duty during this period, and the primary benefit of employment, was full access to transition activities.

9. Prior to the RIF, Defendant placed a disciplinary "Pivot" flag on Plaintiff's profile. A valid performance improvement plan inherently requires an active role, measurable work metrics, and managerial coaching. On January 28, 2026, Defendant eliminated Plaintiff's role, Plaintiff's manager, and the majority of the direct team, placing Plaintiff into a non-working transition period expressly designated for internal and external job searching. This comprehensive restructuring rendered the Pivot plan legally and structurally impossible to execute or complete.

10. On January 29, 2026, Defendant unilaterally revoked Plaintiff's approved return-to-work status and forced Plaintiff to remain on an involuntary, inactive medical leave. Concurrently, Defendant intentionally maintained the defunct "Pivot" flag on Plaintiff's profile. Defendant utilized the combination of this involuntary leave status and the defunct disciplinary flag as an absolute administrative bar to Plaintiff's internal transfer capabilities.

11. While Plaintiff could view the internal portal, Defendant's system blocks intentionally disabled Plaintiff's functional ability to execute "Informational Requests," directly engage with hiring managers, or submit applications for open roles, effectively stripping Plaintiff of the transition privileges guaranteed by the January 28 policy.

## C. Bad Faith, Constructive Denial, and Refusal of Cooperative Dialogue

3

12. Through continuous internal escalations during February and March 2026, Plaintiff compelled Defendant to retroactively recognize February 2, 2026, as Plaintiff's official return-to-work date. Despite this recognition, Defendant's Disability and Leave Services (DLS) department actively refused Plaintiff's repeated requests to update the internal employment systems to reflect the mandated 20-hour per week medical capacity restriction.

13. To circumvent the strict liability standards of the NYCHRL, Defendant executed an administrative bifurcation. Defendant separated Plaintiff's active Leave of Absence (LOA) case from the underlying medical accommodation request (Case 12580044). On February 5, 2026, Defendant placed Case 12580044 on an indefinite administrative hold. Defendant communicated that this hold would remain in place until Plaintiff's separation date, utilizing the rationale that there was no work to accommodate. By freezing the accommodation request while maintaining the April 28 termination clock, Defendant constructively denied the previously approved 20-hour restriction.

14. Defendant subsequently utilized this dormant case file to systematically neutralize all future compliance efforts. On March 14, 2026, Plaintiff submitted comprehensive, multi-part accommodations requests. Plaintiff explicitly sought three distinct accommodations to access the privileges of the transition period: (1) a proportional extension of the transition timeline to account for his 50% medical capacity; (2) reassignment assistance to a vacant position; and (3) the removal of the exclusionary transfer restriction caused by the defunct Pivot flag. Plaintiff attached a formal cover letter explicitly instructing Defendant that these new, distinct accommodations requests were not to be merged with any pre-existing case files.

15. Defendant willfully ignored Plaintiff's directive. Defendant intercepted the March 14, 2026, accommodations requests, summarily marked the multiple distinct requests as a single "duplicate" ticket, and cancelled them en masse. Defendant then merged the cancelled requests into the dormant Case 12580044, affirmatively evading its statutory duty to conduct an individualized, good-faith cooperative dialogue for each distinct accommodation request.

16. On March 27, 2026, Defendant issued a formal, written blanket denial of all accommodations. Defendant's designated point of contact for HR and DLS matters, Emmanuel Ramirez (Operations Manager, Disability and Leave Services, jemmanua@amazon.com), explicitly declared:

> "For avoidance of doubt, any other outstanding accommodations and/or leave requests—including the requests in your March 14 correspondence with Amazon DLS—are denied since your job has been eliminated."

17. Under NYCHRL § 8-107(28), an employer faces independent, strict liability if it fails to engage in a good-faith "Cooperative Dialogue." Defendant's written denial conclusively proves Defendant willfully relied upon a blanket corporate action (the RIF) to refuse the statutorily mandated, individualized cooperative dialogues for each of Plaintiff's distinct March 14 requests.

4

## D. Imminent Irreparable Harm (CPLR § 6301)

18. Plaintiff will suffer immediate and irreparable harm absent the intervention of this Court. Defendant is actively utilizing a unilateral timeline to permanently extinguish Plaintiff's statutory rights and unique privileges of employment, which cannot be cured, reconstructed, or compensated by any future award of monetary damages.

19. Permanent Deprivation of Unique Internal Market Access: Defendant has imposed a unilateral separation date of April 28, 2026. Upon this date, Plaintiff will be permanently severed from Defendant's internal corporate network. During the transition period, Defendant's internal portal provides a unique, unquantifiable competitive advantage: the ability to access "internal-only" premium postings, view non-public hierarchies, and execute unmediated pre-interview intelligence gathering via "Informational Requests." Furthermore, this access uniquely includes the retention of an active internal corporate email account. This email serves as an essential internal credential, affording Plaintiff the ability to directly engage hiring managers and colleagues as a current peer, rather than an external applicant. Severing this access strips Plaintiff of the inherent credibility and networking capabilities strictly required to successfully secure an internal transfer. By maliciously maintaining the defunct "Pivot" block and the involuntary leave status, Defendant paralyzed Plaintiff's internal profile. On April 14, 2026, Defendant's system matched Plaintiff with an active "Internal Only" executive role in New York (L7 Principal Consultant), but Defendant's retaliatory system blocks prevented Plaintiff from utilizing the "Request Informational" mechanism or applying. If Defendant executes the April 28 separation, Plaintiff will permanently lose the ability to act upon this unique informational asymmetry. Monetary damages cannot retroactively reconstruct the internal networking, peer-to-peer engagement, and application privileges Defendant actively obstructed.

20. Willful Destruction of the Statutory Cooperative Dialogue: By maintaining an administrative freeze and intentionally defaulting on cure deadlines, Defendant is running out the clock to permanently bypass the cooperative dialogues mandated by the NYCHRL. Once the April 28 separation date passes, the statutory opportunity to accommodate the Plaintiff within the enterprise—specifically through internal reassignment or schedule modification—is permanently destroyed. The loss of a civil right cannot be cured by a future monetary award.

21. Pretextual Sabotage of Transition Privileges: Defendant is willfully maintaining factually false internal administrative data, continuing to code Plaintiff at a 100% unrestricted physical capacity despite the formal January 27, 2026, medical approval restricting Plaintiff to a 50% capacity (20 hours per week). Defendant's intentional suppression of this restriction is a calculated mechanism designed to unlawfully eliminate the medical foundation for Plaintiff's March 14, 2026, accommodations requests. By constructively denying the 50% capacity restriction, Defendant actively manufactures a pretext to deny Plaintiff's accommodations requests for a proportional extension of the transition timeline.

5

22. De Facto Industry Expulsion and Anti-Competitive Blacklisting: If Defendant is permitted to effectuate the April 28 separation, Defendant's internal policies dictate that employees separated with an active "Pivot" flag are subject to a punitive, five-year "no-rehire" ban. Because Defendant eliminated Plaintiff's role, the Pivot plan was rendered structurally obsolete, stripping Plaintiff of any administrative mechanism to cure or remove this retaliatory flag. Amazon Web Services is the single largest global cloud provider, possessing dominant market share. Imposing a five-year ban from the industry's largest employer based on a defunct, pretextual disciplinary flag effectively blacklists Plaintiff from a massive portion of the cloud computing sector. This maliciously limits Plaintiff's public opportunities to remain employed in their specialized industry. This level of anti-competitive career sabotage and reputational destruction constitutes immediate and irreparable harm that cannot be remedied by a future award of monetary damages.

## III. CAUSES OF ACTION
### COUNT I: Failure to Accommodate (NYSHRL § 296 and NYCHRL § 8-107)

23. Defendant failed to provide reasonable accommodations by refusing to equitably toll the transition period, enforcing exclusionary profile blocks utilizing a defunct performance plan, and summarily refusing to evaluate Plaintiff for reassignment to vacant internal roles.

### COUNT II: Multiple Independent Failures to Engage in Cooperative Dialogue (NYCHRL § 8-107(28))

24. Defendant bears independent, strict liability for multiple, distinct failures to conduct good-faith, individualized cooperative dialogues. Under the NYCHRL, an employer must engage in a distinct dialogue for each requested accommodation. Defendant's systemic bundling and cancellation of Plaintiff's three distinct March 14 accommodations requests as a single "duplicate," culminating in Defendant's March 27 written communication explicitly relying on a blanket policy to bypass the interactive process, establishes multiple, independent statutory violations for each ignored request.

### COUNT III: Retaliation (NYSHRL § 296 and NYCHRL § 8-107(7))

25. Defendant retaliated against Plaintiff for requesting reasonable accommodations by unilaterally revoking approved statuses, willfully routing distinct medical requests into a dormant administrative holding file, and maintaining pretextual capacity coding to sabotage equitable transition extensions.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant and grant the following equitable and injunctive relief pursuant to CPLR §§ 6301 and 6311:

6

A. Equitable Tolling to Preserve the Status Quo: An immediate order equitably tolling the April 28, 2026, separation date and enjoining Defendant from effectuating the termination of Plaintiff's employment, thereby freezing the transition period and preserving Plaintiff's internal corporate access pending the final adjudication of this action.

B. Restitution of Administrative Records: An order directing Defendant to correct Plaintiff's internal employment profile to accurately reflect his medical certification and readiness to work subject to the mandatory 20-hour per week capacity restriction, retroactive to February 2, 2026. This administrative correction must utilize the appropriate internal designation (e.g., "Active – Accommodated," "Active – Restricted," or an equivalent status) to ensure Plaintiff is officially coded as an active employee with a restricted schedule, rather than being unlawfully maintained on an inactive or leave status.

C. Restoration of Employment Privileges: An order directing Defendant to restore Plaintiff's equal access to the privileges of employment guaranteed by Defendant's January 28, 2026, transition policy. This must explicitly include full access to the internal employment market, the retention of an active internal corporate email account for peer-to-peer networking, the ability to execute Informational Requests without interference from exclusionary profile blocks, and the ability to apply for and be considered in earnest for internal transfers.

D. Ultimate Equitable Restitution of the Transition Period: An order, upon final adjudication of Defendant's statutory violations, directing Defendant to provide equitable restitution of the transition period by extending it a total of 169 days. This reflects the proportional 90-day extension required to accommodate the 50% capacity restriction, plus day-for-day restitution for the 79 days of the transition period unlawfully obstructed by Defendant. Specifically, this 79-day obstruction consists of 5 days (January 28, 2026, to February 1, 2026) during which Defendant forced Plaintiff onto an involuntary medical leave, and 74 days (February 2, 2026, to April 16, 2026) wherein the vast majority of Plaintiff's strictly limited medical capacity was consumed addressing Defendant's continuous compliance failures and administrative violations. This obstruction actively prevented Plaintiff from utilizing the transition period for its intended purpose.

E. Extension of Outplacement Services: An order directing Defendant to proportionally extend the duration of the Lee Hecht Harrison outplacement and placement services offered to Plaintiff as a privilege of employment during the transition period, explicitly to reflect and accommodate Plaintiff's 50% medical capacity restriction.

F. Termination of Interim Relief: An order providing that equitable tolling shall remain in effect and shall only terminate upon (1) Plaintiff successfully commencing a new internal or comparable external role, (2) Defendant's formal approval and implementation of the distinct reasonable accommodations requested by Plaintiff on March 14, 2026, or mutually agreed upon

7

effective alternatives resulting from individualized, good-faith cooperative dialogues for each distinct request, or (3) further order of this Court.

G. Awarding Plaintiff compensatory damages, punitive damages, court costs, and such other relief as this Court deems just.

Dated: April 16, 2026
New York, New York

BABACK KERMANSHAHI
Plaintiff Pro Se
110 West Dudley Avenue
Westfield, NJ 07090-4902
732-213-9526
Mail.bob.k@gmail.com

8

## VERIFICATION

STATE OF NEW YORK )
COUNTY OF NEW YORK ) ss.:

BABACK KERMANSHAHI, being duly sworn, deposes and says:
I am the Plaintiff in this action. I have read the foregoing Verified Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

_____
BABACK KERMANSHAHI


Sworn to before me this _____ day of April, 2026


_____
NOTARY PUBLIC

9

Dated: April 16 , 20 26

[sign your name]

BABACK KERMANSHAHI
[print your name]

110 W DUDLEY Ave

WESTFIELD , NJ 07090

732-213-9526
[your address and telephone number]

## VERIFICATION

STATE OF NEW YORK

COUNTY OF New York ss:

BABACK KERMANSHAHI [your name], being duly sworn, deposes and says:

I am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof.
The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief,
and as to those matters, I believe them to be true.

[sign your name in front of a notary]

BABACK KERMANSHAHI
[print your name]

Sworn to before me this

16 day of April , 20 26

Notary Public

ADRIAN HERNANDEZ
COMMISSIONER OF DEEDS
CITY OF NEW YORK NO. 3-10297
CERTIFICATE FILED IN NEW YORK
COMMISSION EXPIRES JANUARY 01, 2026

Rev. 12/02/2025